# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# GREAT FALLS DIVISION

| | |
|---|---|
| RODNEY A. EDMUNDSON, | Cause No. CV-07-34-GF-SEH-RKS |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| WARDEN JAMES MACDONALD, et. al. | |
| Defendants. | |

This matter comes before the Court on Plaintiff's Complaint filed March 12, 2007.

## I. STATEMENT OF THE CASE

### A. Jurisdiction

Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983 raising allegations of racial discrimination, retaliation, failure to protect, denial of due process, and denial of access to the courts in violation of the First, Eighth and Fourteenth Amendments to the United States Constitution. Accordingly, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### B. Parties

Plaintiff is an African-American prisoner who was incarcerated at the Crossroads Correctional Center in Shelby, Montana at the time he filed his Complaint and at all times relevant thereto. He is currently incarcerated at Montana State Prison in Deer Lodge, Montana and is proceeding pro se.

Plaintiff has named the following Defendants: Warden James MacDonald, Assistant Warden Samuel Law, Unit Manager R. Sturchio, Case Manager C. Christiaens, Correctional Captain Mertz, Correctional Captain Sullivan, Warehouse Worker Ford, and Medical Staff employee Darcy Larson. Plaintiff added Case Manager Brooke McDonough and Correctional Lieutenant Gini as defendants by amendment dated May 10, 2007. (Document 11). The allegations against all defendants appear to arise out of the course and scope of Defendants' employment at Crossroads Correctional Center.

### C. Procedural History

Plaintiff was granted leave to proceed in forma pauperis on March 27, 2007 and his Complaint was deemed filed as of March 12, 2007.

Beginning on March 14, 2007, Plaintiff submitted multiple supplements, notices and motions for leave to add defendants and amend his Complaint. (See Documents 4, 7, 10, 11, and 14). The Court allowed Plaintiff's supplements and notices (Documents 4, 7 and 10) and granted Plaintiff's first motion to add defendants (Document 11) on May 10, 2007 (Document 12). On October 25, 2007, the Court denied Plaintiff's second motion for leave to file amendment and to add defendants for failure to exhaust administrative remedies prior to filing his Complaint.

(Document 15).

     **D.    Factual Background**

        **1.  Bible Study**

Plaintiff alleges that on October 3, 2006, while attending a Prison Fellowship bible study, the facilitator of the program, Doug, asked if anyone "had had a problem with niggers?" Plaintiff explained to the facilitator that the "N" word offended him. Plaintiff made a formal complaint regarding this incident. (Document 1, p. 9, ¶¶ 11-12).

        **2.  Removal from Library**

On October 4, 2006, Unit Manager Sturchio ordered Plaintiff to remove himself from the law library and return to housing "because of a miscommunication between staff involving defendant Darcy Larson." (Document 1, p. 9, ¶ 12). Plaintiff alleges that this incident denied Plaintiff his right to access the courts and was done in retaliation for Plaintiff filing a complaint about the bible study.

        **3.  Medical Care**

On October 9, 2006, Plaintiff was suffering from lower back and hip pain. He was sent to the infirmary and was registered into intake by Nurse Darcy Larson, the nurse Plaintiff filed a grievance against regarding the October 4, 2006 incident. Nurse Larson checked Plaintiff's vitals and then directed him to an observation room where he waited for 45 minutes. Nurse Larson then told him to go back to work in the kitchen without having him examined by anyone. (Document 1, p. 10, ¶ 15).

On October 15, 2006, Plaintiff was taken to the infirmary and seen by Nurse Arnold who

scheduled an appointment for Plaintiff to be examined by the facility health provider on October 20, 2006. Plaintiff was prescribed Flexiril for the lower back and hip pain which was dispensed on October 21, 2006. (Document 1, p. 11, ¶ 18).

### 4. Discrimination on December 18, 2006

On December 18, 2006 at 6:15 a.m., Plaintiff alleges he was discriminatorily harassed by Captain Sullivan for having his hands in his pants. (Document 1-14; p. 4). He alleges that Captain Sullivan did not subject similarly situated white prisoners to the same treatment.

### 5. Disciplinary Hearings

#### a. Warehouse Incident–October 11, 2006

On October 11, 2006, Plaintiff was attempting to retrieve some property from the warehouse. Plaintiff alleges he had been given permission to go to the warehouse by Defendant Mertz. While at the warehouse, Defendant Gini told Plaintiff that Defendant Sturchio had instructed Sgt. Gini to take Plaintiff's "lay-in." Plaintiff alleges that Unit Manager Sturchio "targeted and questioned" Plaintiff as to why he was in the warehouse and then removed Plaintiff general population and placed him in segregation. (Document 1, pp. 10-11, ¶ 17).

Plaintiff was served with disciplinary charges for flagrant disobedience and lying to staff based upon the above described events. Defendant Christiaens presided over Plaintiff's disciplinary hearing. Plaintiff requested witnesses to be called and a continuance but was denied both. Plaintiff was found guilty and sentenced to five days in disciplinary detention for lying to staff and ten days disciplinary detention for flagrant disobedience. Plaintiff filed a disciplinary

appeal with Warden McDonald which was denied by Assistant Warden Law. (Document 1, pp. 11-12, ¶¶ 19-27).

### b. First Assault Hearing–December 2006

On December 24, 2006, Plaintiff was removed from general population and placed into segregation. He was served with disciplinary charges for assault on December 28, 2006. Defendant Sturchio presided over Plaintiff's disciplinary hearing. Plaintiff again requested a continuance and that Defendant Sturchio call certain witness at the hearing. Defendant Sturchio denied the continuance and refused to call any witnesses. Plaintiff was found guilty of assault and given ten days disciplinary detention. Plaintiff alleges that Defendant Sturchio never provided Plaintiff any statements, never stated the facts showing that Plaintiff assaulted the victim and did not give Plaintiff an explanation for his findings. (Document 1, pp. 12-13, ¶¶ 28-34).

Plaintiff filed a disciplinary appeal with Warden MacDonald which was denied by Assistant Warden Law. (Document 1, p. 12, ¶¶ 35-36).

### c. Second Assault Hearing–February 2007.

On February 4, 2007, Plaintiff's cellmate was assaulted by an inmate named Cory Roberts. Plaintiff was questioned on February 5, 2007 and removed from general population and placed in segregation for three days without explanation. On February 7, 2007, inmate Cory Roberts was handcuffed and taken to segregation. En route to segregation, Roberts shouted loudly that Plaintiff was a "rat." On February 8, 2007, Plaintiff was released from segregation and the C-pod module was placed on "emergency lockdown status." Plaintiff states that the

other prisoners believed the lock-down was because of Plaintiff "snitching" on prisoner Roberts. (Document 1, p. 13, ¶¶ 37-42).

On February 13, 2007, Plaintiff was handcuffed and escorted (as if in protected custody) to Defendant Sturchio's office with prisoners ranting "there goes the rat." Defendant Sturchio told Plaintiff that he was moving him from the Closed Custody Management Program (CCMP) to the high security population. Plaintiff alleges that in high security population he would have full contact with white supremacists who wanted to harm him. Defendant Sturchio told Plaintiff he was being moved from the CCMP program so that he would not be in the program with "white boys." Defendant Sturchio also stated that he was moving Plaintiff to make room for the "white boys." (Document 1, p. 14, ¶¶ 43-44).

When Plaintiff was placed in high security, he approached the white supremacist leader asking what was planned for Plaintiff. Plaintiff was told he would have to find out. Plaintiff was in fear for his personal health and safety and therefore took a "peremptory strike" against the other prisoner and they began fighting. When the fight was broken up, Plaintiff was removed from general population, placed in segregation, and charged with assault and flagrant disobedience. (Document 1, pp. 14-15, ¶¶ 46-48).

Plaintiff was found guilty, sentenced to fifteen days disciplinary detention for each charge, and placed on Automatic Administrative Segregation for six months. (Document 1, p. 15, ¶ 52).

Plaintiff states that Defendant Christiaens (the hearing officer) never read Plaintiff's statement and never considered the danger that Plaintiff was subjected to by Defendant Sturchio.

Plaintiff states that Defendant Christiaens could not be an impartial fact finder because of her biased approach and existing prejudice and attitude towards the Plaintiff. (Document 1, p. 15, ¶ 53). Plaintiff filed a disciplinary appeal with Warden MacDonald which was denied by Assistant Warden Law. (Document 1, pp. 15-16, ¶¶ 54-55).

### E.     Plaintiff's Allegations

Plaintiff alleges that Warden James MacDonald and Assistant Warden Samuel Law refused to overturn Plaintiff's disciplinary convictions despite their knowledge of the due process violations. He also alleges that Warden MacDonald tolerated racial discrimination, prejudice and inequalities with regard to the bible study incident.

Plaintiff makes numerous allegations against Unit Manager Sturchio. First, he contends that Defendant Sturchio filed false charges against him and removed him from general population in retaliation for Plaintiff filing complaints and grievances. Secondly, he alleges that Defendant Sturchio denied him due process of law by not allowing him to call witnesses at his first assault disciplinary hearing, denying him a continuance, denying him access to evidence, not acting as an impartial fact-finder, and conspiring with Defendants Christiaens, McDonough, and Gini to remove evidence from Plaintiff's personal property. Third, he alleges that Defendant Sturchio placed him in a dangerous situation in violation of the Eighth Amendment of the United States Constitution. Lastly, Plaintiff alleges that Defendant Sturchio racially discriminated against him by issuing false disciplinary reports and removing Plaintiff from general population.

Plaintiff alleges that Case Manager Christiaens violated his due process rights at his disciplinary hearings by refusing without justification to call witnesses, denying Plaintiff a

continuance, denying Plaintiff access to evidence, and denying Plaintiff a fair hearing.

Plaintiff alleges that Defendants Mertz and Ford conspired to deter and obstruct justice by giving false information in reference to the warehouse incident.

Plaintiff alleges that Captain Sullivan singled out Plaintiff and targeted him because of his race and thus denied Plaintiff equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution.

Plaintiff alleges that Nurse Darcy Larson, a medical staff employee, caused Plaintiff to be targeted and reprimanded. He also alleges that Nurse Larson negligently failed to provide medical care in retaliation for Plaintiff filing a grievance against her and was negligent under state law.

Finally, Plaintiff alleges that Defendants McDonough and Gini conspired to deny equal protection and confiscate evidence out of Plaintiff's property. Plaintiff's claims against Defendants McDonough and Gini apparently arise out of the warehouse incident after which Plaintiff received a disciplinary report. According to the informal resolution forms attached to Plaintiff's Complaint, Defendants McDonough, Gini and Christiaens attended Plaintiff's disciplinary hearing on October 16, 2006 regarding the warehouse incident. Plaintiff is apparently alleging that these Defendants knew that Plaintiff had a "lay-in" to get property from the warehouse and yet did not discuss it at the hearing.

## II. PRESCREENING

### A. Standard

As Plaintiff is proceeding in forma pauperis, his Complaint is subject to screening under

28 U.S.C. § 1915 and 28 U.S.C. § 1915A, which impose a screening responsibility on the district court. Section 1915A reads in pertinent part as follows:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and][o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a) and (b); *see also* 28 U.S.C. § 1915(e)(2)(B) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . (B) the action or appeal-(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.").

Both sections 1915A(b) and 1915(e)(2)(B) provide that the Court may dismiss the complaint before it is served upon the defendants if it finds that the complaint is "frivolous" or that it "fails to state a claim upon which relief may be granted." A complaint is frivolous, if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ____, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (quotation omitted). This requirement demands "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* A complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v.*

*Pardus*, 127 S.Ct. 2197, 2200 (2007)(quoting *Bell*, 127 S.Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))).

Additionally, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 127 S.Ct. at 2200; *Cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice.").

The Court has construed Plaintiff's claims into five categories: racial discrimination, retaliation, access to courts, failure to protect and due process claims

### B. Racial Discrimination Claims

"Racial discrimination in prisons and jails is unconstitutional under the Fourteenth Amendment, except for 'the necessities of prison security and discipline.'" *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004)(quoting *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972)). "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citation omitted). "Prisoners are protected under the Equal Protection Clause . . . from invidious discrimination based on race." *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998).

"Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Maynard v. City of San Jose,* 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original) (citation omitted).

Plaintiff alleges that Defendant Sturchio issued Plaintiff false disciplinary reports and removed him from general population because he is black. He also alleges that Captain Sullivan singled him out and targeted him because of his race. These allegations are sufficient to state a claim under the Fourteenth Amendment of the United States Constitution and therefore the Court will direct the Complaint to be served upon Defendants Sturchio and Sullivan by separate order.

However, Plaintiff's allegation that Warden James MacDonald tolerated racial discrimination, prejudice and inequalities with regard to the bible study incident is too tenuous to state a claim. Although Plaintiff may have been offended by the words used in the bible study group, that discussion was initiated by a volunteer who has not been named as a Defendant in this action. The mere statement of that word in Plaintiff's presence, without more is not a constitutional violation. See *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996)("verbal harassment generally does not violate the Eighth Amendment").[1] There is nothing to suggest that this was an ongoing problem or that Warden MacDonald was personally involved in the incident. Furthermore, in Plaintiff's grievance regarding this matter, the action requested was that, "this member of Prison Fellowship should perhaps not be allowed back into this facility." (Document 1-6, p. 4). In response to Plaintiff's Grievance Appeal to the Corrections Division, Plaintiff was

---

[1]Similarly, Plaintiff's allegation that Defendant Sturchio made a derogatory and sarcastic statement about Plaintiff being in pain (See Complaint, p. 10, ¶ 16), fails to state a claim as it is also mere verbal harassment.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE -
CV-07-34-GF-SEH-RKS / PAGE 11

informed that the volunteer involved was no longer at the facility. (Document 1-6, p. 5).

Therefore, this claim against Warden MacDonald will be recommended for dismissal.

### C. Retaliation Claims

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)(citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994)).

Plaintiff makes two allegations of retaliation.  First, he contends that Defendant Sturchio filed false charges against him, moved him from general population to segregation, and removed him from the library in retaliation for Plaintiff filing complaints and grievances.  Secondly, Plaintiff alleges that Nurse Larson failed to provide medical care in retaliation for Plaintiff filing a grievance against her.   Plaintiff's removal from the library on the one occasion is too de minimis to rise to the level of a constitutional deprivation and should be dismissed.  However, Plaintiff's other retaliation allegations (that Defendant Sturchio filed false charges against him and moved him from general population to segregation, and his allegation that Nurse Larson failed to provide him medical care) are sufficient to state a claim and will therefore be served upon Defendants Sturchio and Larson.

Plaintiff's has also alleged a state law negligence claim against Nurse Larson.  The Court should decline to exercise supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(c)(1) due to the complex procedural aspects of a state law medical negligence claim

involving a state correctional facility.

### D. Legal Access

Although not included in the "claims for relief" section of Plaintiff's Complaint, Plaintiff states in his facts that Unit Manager Sturchio ordered Plaintiff to remove himself from the legal law library and return to house at 4:30 p.m. on October 4, 2006 because of a miscommunication between staff involving Defendant Darcy Larson.

Convicted prisoners have a fundamental right of meaningful access to the Courts. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). It requires prison officials to provide the tools necessary only for inmates to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 356, 116 S. Ct. 2174, 2182, 135 L. Ed. 2d 606, 620 (1996).

However, for a prisoner to have a claim for a deprivation of his right of access to the courts, under the constitutional doctrine of standing, the prisoner must show an "actual injury" from such deprivation. *Lewis*, 518 U.S. at 348, 116 S. Ct. at 2178. Significantly though, "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." *Lewis*, 518 U.S. at 351, 116 S. Ct. at 2180.

> Insofar as the right vindicated by *Bounds* is concerned, "meaningful access to the courts is the touchstone," *Bounds*, 430 U.S. at 823, 97 S. Ct. at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.
>
> He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the

prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 518 U.S. at 351, 116 S. Ct. at 2180.

Plaintiff does not have a right to unlimited methods of obtaining legal assistance. Plaintiff's allegation that he was removed from the library at 4:30 p.m. on one afternoon due to a "miscommunication" is too de minimis to establish a constitutional violation. It is inconceivable that said removal denied Plaintiff his right to meaningful access to the Courts. Accordingly, this claim will be recommended for dismissal.

E. **Failure to Protect**

Plaintiff's allegation that Defendant Sturchio placed him in a dangerous situation also fails to state a claim upon which relief may be granted. The conditions under which a prisoner is confined are subject to scrutiny under the Eighth Amendment. "Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (internal citations omitted).

To prevail and recover damages on an Eighth Amendment deliberate indifference claim, Plaintiff must "prove (1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the eighth amendment and (2) that this indifference was the actual and proximate cause of the deprivation of the inmates' eighth amendment right to be free from cruel and unusual punishment." Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

However, a defendant's actions are not the proximate cause of a plaintiff's alleged injuries if another cause intervenes and supersedes his liability for the subsequent events. White

*v. Roper,* 901 F.2d 1501, 1506 (9th Cir. 1990). Plaintiff admits that he "took a peremptory strike" against another prisoner. He himself is therefore responsible for any injuries he suffered in that altercation. Even if Defendants improperly placed Plaintiff in a dangerous area of the prison, it was Plaintiff that ultimately caused his own injuries. Therefore, this claim will be recommended for dismissal.

  **F. Due Process Claims**

Plaintiff alleges that he was denied due process of law with regard to the three disciplinary hearings discussed in the facts section above. Specifically, he alleges (1) that Warden James MacDonald and Assistant Warden Samuel Law refused to overturn Plaintiff's disciplinary convictions despite their knowledge of the due process violations; (2) that Defendant Sturchio denied him due process of law by not allowing him to call witnesses at his first assault disciplinary hearing, denying him a continuance, denying him access to evidence, not acting as an impartial fact-finder, and conspiring with Defendants Christiaens, McDonough, and Gini to remove evidence from Plaintiff's personal property; (3) that Case Manager Christiaens violated his due process rights at his disciplinary hearings by refusing without justification to call witnesses, denying him a continuance, denying him access to evidence and denying him a fair hearing; (4) that Defendants Mertz and Ford conspired to deter and obstruct justice by giving false information in reference to the warehouse incident; (5) that Nurse Darcy Larson caused Plaintiff to be targeted and reprimanded; and (6) that Defendants McDonough and Gini conspired to deny equal protection and confiscate evidence out of Plaintiff's property.

To state a claim for a due process violation, a plaintiff must show (1) that he had a

protected liberty interest, and (2) that he was deprived of that interest without adequate due process. If there is no liberty interest at stake, the Constitution does not require any process, and the second element becomes irrelevant. *See, e.g.*, Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 223-24 (1976); Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Erickson v. United States, 67 F.3d 858, 861 (9th Cir. 1995).

In the prison setting, a liberty interest is recognized and protected only if state officials or employees take actions that either (1) affect the sentence imposed upon conviction in an unexpected manner, or (2) impose a hardship that is atypical and significant in relation to the ordinary incidents of prison life. *See* Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003).

In Plaintiff's case, the threshold requirement for showing a liberty interest is not met. Plaintiff is serving a five-year term for assault with a weapon. *See* CON Network, http://app.mt.gov/conweb. "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." Meachum, 427 U.S. at 225. Consequently, placement in any part of a Montana prison would not affect the sentence in an unexpected manner. Therefore, the first prong of the *Sandin* test for a liberty interest is not met.

The second prong of the *Sandin* test also is not met. Whether a hardship is "atypical and significant" depends on three factors:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE -
CV-07-34-GF-SEH-RKS / PAGE 16

the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (citing *Sandin*, 515 U.S. at 486-87); *see also Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (holding that inmate was not deprived of a liberty interest where he was placed at a higher security level than indicated by calculation under controlling prison regulations).  Plaintiff was given at most thirty days in disciplinary detention and was placed on Automatic Administrative Segregation for six months.  This is not atypical or significant in comparison to inmates in protective custody or inmates whose placement has not yet been determined.  *See Sandin*, 115 S.Ct. at 2301 (30 days disciplinary segregation not "atypical" where no evidence that difference from other kinds of segregation).  Placement in segregation falls within the terms of confinement ordinarily contemplated when a prison sentence is imposed, *see Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th Cir. 1986), and so the discipline Plaintiff received "comported with the prison's discretionary authority."

Thus, Plaintiff cannot show that he had a liberty interest in avoiding the discipline received.  *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003)("[A]dministrative segregation in and of itself does not implicate a protected liberty interest.")(*citing Sandin*, 515 U.S. at 486).

Therefore, it is irrelevant whether Plaintiff received adequate due process protections, because he was not constitutionally entitled to due process.  Plaintiff has failed to state a viable due process claim with regard to any of the alleged deficiencies with his disciplinary hearings and his due process claims against Defendants MacDonald, Law, Sturchio, Christiaens, McDonough, Gini, Mertz, Ford, and Larson will be recommended for dismissal.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. Plaintiff's racial discrimination claim against Defendant MacDonald should be **DISMISSED.**

2. Plaintiff's failure to protect claim against Defendant Sturchio should be **DISMISSED.**

3. Plaintiff's due process claims against Defendants MacDonald, Law, Sturchio, Christiaens, McDonough, Gini, Mertz, Ford, and Larson should be **DISMISSED.**

4. Plaintiff's claim that Defendant Sturchio removed him from the library in retaliation for Plaintiff filing complaints and grievances should be **DISMISSED**.

5. Plaintiff's denial of access to the courts claim against Defendant Sturchio should be **DISMISSED.**

6. Defendants MacDonald, Law, Christiaens, McDonough, Gini, Mertz, and Ford should be **DISMISSED.**

7. The Court should decline to exercise supplemental jurisdiction over Plaintiff's state law medical negligence claim against Nurse Larson pursuant to 28 U.S.C. § 1367(c)(1).

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to

timely file written objections may bar a de novo determination by the district judge.

**PLAINTIFF IS CAUTIONED THAT HE MUST KEEP THE COURT ADVISED OF ANY CHANGE OF ADDRESS AND A FAILURE TO DO SO COULD RESULT IN A DISMISSAL OF THIS CASE WITHOUT FURTHER NOTICE.**

DATED this 25th day of April, 2008.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge